O

# United States District Court
# Central District of California

| | |
|---|---|
| In re: | Case № 5:15-cv-00815-ODW |
| | U.S. Bankruptcy Court Case Nos. |
| CITY OF SAN BERARDINO, |    Adverse Action: 6:15-ap-01119-MJ |
| CALIFORNIA, |    Main Action: 6:12-bk-28006-MJ |
| Debtor. | |
| | **ORDER GRANTING IN PART AND** |
| SAN BERNARDINO CITY | **DENYING IN PART PLAINTIFFS'** |
| PROFESSIONAL FIREFIGHTERS, | **MOTION TO WITHDRAW** |
| LOCAL 891; GREGORY PARKER; SAM | **REFERENCE [1]** |
| BASHAW; CHRIS NIGG; THOMAS | |
| JEFF ENGLISH; RICHARD LENTINE; | |
| STEVE TRACY; KENNETH KONIOR, | |
| Plaintiffs, | |
| CITY OF SAN BERARDINO, | |
| CALIFORNIA; ALAN PARKER; and | |
| DOES 1-10, | |
| Defendants. | |

## I. INTRODUCTION

This action is part of a lengthy feud between the City of San Bernardino ("City") and its firefighters over the terms and conditions of their employment, which has undergone several changes as a result the City's bankruptcy. *In re: City of San Bernardino, Cal.*, No. 6:12–bk–28006–MJ (Bankr. C.D. Cal.). Plaintiffs San Bernardino City Professional Firefighters Local 891, Gregory Parker, Sam Bashaw, Chris Nigg, Thomas Jeff English, Richard Lentine, Steve Tracy, and Kenneth Konior ("Firefighters") filed this adverse action in the bankruptcy court, alleging that the City reduced their wages and benefits in violation of the City's Charter. The Firefighters now move this Court to withdraw reference of the case from the bankruptcy court and proceed with the matter before this Court. For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the Firefighters' Motion.[1] (ECF No. 1.)

## II. FACTUAL BACKGROUND

The extensive factual and procedural history underlying the City's bankruptcy and the labor negotiations between the City and the Firefighters has been recited by this Court at length in prior orders,[2] and thus the Court will recite only the salient facts. In 2003, the City and the Firefighters entered into a collective bargaining agreement, also known as a Memorandum of Understanding ("MOU"). Although the MOU technically expired in 2010, it contained an "evergreen clause" that allowed the terms of the MOU to remain in effect until a new MOU was negotiated. (Mot. at 7.) There were some attempts thereafter to negotiate a successor MOU, but those negotiations were not fruitful. (Compl. ¶ 14.)

In August 2012, after projecting a budget deficit of $45.8 million, the City filed a voluntary petition under Chapter 9 of Title 11 of the United States Code. (*Id.* ¶ 12.)

---

[1] After considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

[2] *See, e.g.*, *In re City of San Bernardino, Cal.*, 530 B.R. 474, 477–80 (C.D. Cal. 2015); *In re City of San Bernardino, Cal.*, 530 B.R. 489, 492–93 (C.D. Cal. 2015); *In re City of San Bernardino, Cal.*, No. 5:15-CV-00042-ODW, 2015 WL 2153770, at *1–2 (C.D. Cal. May 7, 2015).

On November 26, 2012, the City Council passed a "Pendency Plan," which set forth a series of expenditure reductions and required the City to negotiate contract modifications with the City's six labor unions, including the Firefighters. (*Id.* ¶ 14.) Five unions agreed to modify their employment agreements, but the Firefighters and the City were unable to reach an agreement. (*See id.*) On February 1, 2013, the City Council, relying on its fiscal emergency status, passed a resolution that imposed "interim terms and conditions of employment" on the Firefighters. (*Id.* ¶ 13.) The Firefighters allege that this resolution effectively reduced their wages in violation of the City's Charter. (*See id.* ¶ 15.)

On March 4, 2013, the City requested authorization from the bankruptcy court to reject the MOU, and for *nunc pro tunc* approval of the City Council's February 1, 2013 resolution. (*Id.* ¶ 17.) The bankruptcy court authorized the City to reject the MOU, but declined to approve the resolution. (*Id.* ¶ 25.) On October 6, 2014, the City further amended the Firefighters' terms and conditions of employment, which again allegedly reduced their wages and benefits in violation of the City's Charter. (*Id.* ¶¶ 26–28.)

On April 10, 2015, the Firefighters filed this adverse action in the bankruptcy court. (ECF No. 1-1.) The Firefighters assert eight causes of action: (1) violation of the First, Fifth, and Fourteenth Amendments under 42 U.S.C. § 1983; (2) violation of the federal Fair Labor Standards Act; (3) violation of the California Public Employees' Retirement Law (two counts); (4) violation of California Code of Civil Procedure section 1085; (5) declaratory relief under state law (two counts); and (6) violation of the California Labor Code. (*Id.*) On April 24, 2015, the Firefighters moved this Court to withdraw reference of the proceeding from the bankruptcy court and to proceed with the matter before this Court. (ECF No. 1.) The City timely opposed, and the Firefighters timely replied. (ECF Nos. 16, 20.) The Motion is now before the Court for consideration.

/ / /

# III. LEGAL STANDARD

In the Central District of California, all cases arising under the United States Bankruptcy Code, as well as any proceedings related thereto, are automatically referred to the bankruptcy court. 28 U.S.C. § 157(a); C.D. Cal. Gen. Order No. 13-05 (2013). However, on timely motion of a party, the district court must withdraw the reference "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). Alternatively, the district court may withdraw the proceeding "for cause shown." *Id.* "The burden of proving that withdrawal is appropriate is on the party seeking withdrawal." *Lucore v. Guild Mortgage Co.*, No. 12-CV-1411-IEG WVG, 2012 WL 2921354, at *2 (S.D. Cal. July 16, 2012).

# IV. DISCUSSION

The Firefighters argue that withdrawing the reference is either required or advisable on several grounds. First, they argue that withdrawal is mandatory because the Complaint asserts claims under non-bankruptcy federal law. (Mot. at 14–16.) Second, they argue that withdrawal is mandatory because their claims are personal injury tort claims. (Mot. at 16–18.) Third, they argue that the Court should exercise its discretion to withdraw the action because it is a non-core proceeding that would be more efficiently litigated in the district court. (Mot. at 18–19, 25–26.) Finally, they argue that they have a Seventh Amendment right to a jury trial on their claims, which must be conducted in the district court. (Mot. at 22–25.) The Court rejects all arguments except the last one.

## A. Mandatory Withdrawal

The Firefighters argue that because this action asserts claims under the Civil Rights Act and Fair Labor Standards Act, it *ipso facto* must proceed before the district court. (Mot. at 14–16.) They also contend that the civil rights claim is a "personal injury tort" that must be tried in the district court. (Mot. at 16–18.) The Firefighters

are wrong on both counts.

### 1. Federal Claims

As an initial matter, the standard for mandatory withdrawal is not nearly as lenient as the Firefighters claim. Federal courts nationwide overwhelmingly follow the rule that mandatory withdrawal "is not available merely whenever non-Bankruptcy Code federal statutes will be considered in the bankruptcy court proceeding, but is reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." *In re Ionosphere Clubs, Inc.*, 103 B.R. 416, 418–19 (S.D.N.Y. 1989) (footnote omitted); *see also, e.g.*, *In re Imperial Capital Bancorp, Inc.*, No. 11-CV-2065, 2012 WL 10710, at *2 (S.D. Cal. Jan. 3, 2012) ("'[W]ithdrawal is only mandatory when complicated, interpretive issues [of non-bankruptcy federal law] are involved.'" (citation omitted)); *In re Temecula Valley Bancorp, Inc.*, 523 B.R. 210, 214 (C.D. Cal. 2014). The Ninth Circuit has, in dicta, implicitly endorsed this standard. *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 & n.4 (9th Cir. 1997). Other circuits also follow this standard, reasoning that a more liberal reading of the statute would "eviscerate much of the work of the bankruptcy courts" and would "create an 'escape hatch' by which bankruptcy matters could easily be removed to the district court." *Matter of Vicars Ins. Agency, Inc.*, 96 F.3d 949, 954 (7th Cir. 1996); *see also In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir. 1990).

Despite this overwhelming authority, the Firefighters strenuously argue that withdrawal is mandatory where the case presents only material considerations of federal law, as opposed to *substantial* and material considerations that are *necessary* to resolve the proceedings. The Firefighters rely solely on the Ninth Circuit's dicta in *Security Farms* to support their position. 124 F.3d at 1008. Not only is dicta not binding on this Court, but *Security Farms* has been uniformly interpreted as supporting the more exacting standard. *E.g.*, *One Longhorn Land I, L.P. v. Presley*, 529 B.R. 755, 760 (C.D. Cal. 2015); *Temecula Valley Bancorp*, 523 B.R. at 214 &

n.2; *Imperial Capital Bancorp*, 2012 WL 10710, at *2. Thus, the Court sees no reason to adopt the more lenient standard advanced by the Firefighters.

In addition to—or perhaps because of—their erroneous recitation of the governing legal standard, the Firefighters do not explain how the resolution of this proceeding requires the Court to consider substantial and material issues of federal law. Instead, they assume that the mere presence of any federal claim (and a § 1983 claim in particular) instantly mandates withdrawal of the action. This, of course, is just plain wrong. Whether a particular claim presents "complicated [and] interpretive" issues of federal law, *Imperial Capital Bancorp*, 2012 WL 10710, at *2, and whether resolution of those issues is necessary to resolve the proceeding, must be analyzed on a case-by-case basis; there is no one-size-fits-all rule. *See In re Chadborne Indus., Ltd.*, 100 B.R. 663, 666 (S.D.N.Y. 1989). The Firefighters fail to do this, and have therefore failed to meet their burden to show that withdrawal is mandatory.

Indeed, the Court's analysis of the issues in this action strongly suggests that substantial federal issues do *not* predominate. All of the Firefighters' federal claims, and four of their six state claims, turn on whether or not the City's Charter guarantees the Firefighters a certain minimum level of wages and benefits. (Compl. ¶¶ 37, 74, 132, 156–59, 190.) Thus, if the bankruptcy court interprets the City's Charter in the Firefighters' favor, they will receive substantially all of their requested relief under their state law causes of action without any need to address issues of federal law. (*See* Mot. at 11–12 ("This [state law] claim seeks to compel the City to comply with its own City Charter by, among other things, setting aside its actions to implement changes to employee pension contributions and reimburse Plaintiffs for all earned wages and salary wrongfully withheld.").) And even if additional relief is possible under the federal causes of action, the Firefighters do not point to any "complicated [and] interpretive issues" of federal law that must be resolved for the Court to afford that relief. On the other hand, if the bankruptcy court interprets the Charter in the City's favor, the Firefighters' federal claims necessarily fail without any consideration

of federal law.[3] As a result, the Court sees no basis for mandatory withdrawal.

### 2. Personal Injury Tort

The Firefighters also argue that their civil rights claim is a personal injury tort that must be tried before the district court. Under § 157, all "personal injury tort and wrongful death claims" that arise in a bankruptcy proceeding must be tried before the district court. 28 U.S.C. § 157(d)(5). The Bankruptcy Code does not define the term "personal injury tort," and the Supreme Court has noted that "there is at least a three-way divide" among the lower courts as to what constitutes a "personal injury tort." *Stern v. Marshall*, 131 S. Ct. 2594, 2606 n.4 (2011).

Under the narrow view, "a personal injury tort claim requires an actual physical injury." *In re Arnold*, 407 B.R. 849, 852 (Bankr. M.D.N.C. 2009); *see also In re Vinci*, 108 B.R. 439, 442 (Bankr. S.D.N.Y. 1989) (adopting the narrow view). Under the expansive view, "a personal injury tort claim is not limited to a claim involving bodily injury[, and instead] 'embraces a broad category of private or civil wrongs or injuries for which a court provides a remedy in the form of an action for damages, and includes damage to an individual's person and any invasion of personal rights, such as libel, slander and mental suffering.'" *Arnold*, 407 B.R. at 852; *see also Moore v. Idealease of Wilmington*, 358 B.R. 248, 250 (E.D.N.C. 2006) (adopting the expansive view); *In re Gary Brew Enter. Ltd.*, 198 B.R. 616, 620 (Bankr. S.D. Cal. 1996) (same). The intermediate approach "look[s] to whether a claim falls within the purview of a personal injury tort claim under the expansive view, yet retain[s] bankruptcy jurisdiction over the claim if it has 'earmarks of a financial, business or property tort claim, or a contract claim.'" *Arnold*, 407 B.R. at 852 (citations omitted);

---

[3] The Court declines to consider the Firefighters' drive-by allegations that certain "acts or omissions" by the City violate 42 U.S.C. § 1985, 18 U.S.C. § 241, and 18 U.S.C. § 242. The Firefighters do not identify what "acts or omissions" among the fifty preceding paragraphs they are referring to, how those acts violate those statutes, what "complicated and interpretive" issues of federal law they present, or how resolution of those issues is necessary to resolving the proceeding. Much the same can be said about their First Amendment claims. To the extent these allegations could form a basis for mandatory withdrawal, the Court considers any such argument waived.

*see also In re Ice Cream Liquidation, Inc.*, 281 B.R. 154, 160–64 (Bankr. D. Conn. 2002) (adopting the middle-ground approach); *Lewis v. Cekosh*, No. 08-CV-985, 2010 WL 2102452, at *2 (E.D. Wis. May 21, 2010) (same).

Under the narrow view, the Firefighters' civil rights claim is not a "personal injury tort" because it indisputably does not arise from physical injuries. Neither is it under the intermediate approach because the essence of the claim is for economic loss (i.e., lost wages), not physical injuries or emotional distress.[4] Under the expansive view, however, the claim could arguably be a "personal injury tort" because the Firefighters allege emotional distress as an ancillary harm. Unfortunately for the Firefighters, the Court finds the expansive view unpersuasive.

First, cases following the expansive view "place too much reliance on whether the alleged claim would be considered a 'personal injury tort' in a nonbankruptcy context." *Ice Cream Liquidation*, 281 B.R. at 161. For example, in *Moore* (on which the Firefighters heavily rely), the court held that *all* § 1983 claims were "personal injury torts" merely because the Supreme Court characterized the claims as such in deciding whether a state's personal injury statute of limitations applies. 358 B.R. at 250; *see also Gary Brew Enter.*, 198 B.R. at 620 (same). *Moore* presents no convincing reason to look to the Supreme Court's non-bankruptcy jurisprudence to evaluate the meaning of that term as it is used in the Bankruptcy Code, and the wholly different policy considerations underlying the Bankruptcy Code in general (and the withdrawal statute in particular) counsels against doing so.

Second, characterizing all § 1983 claims as "personal injury torts" is grossly overbroad. That statute provides a private right of action for any constitutional violation or violation of federal law, which, as this case illustrates, will occasionally involve claims for purely economic damages (such as wage claims and business loss claims). It would stretch the term "personal injury tort" beyond all recognition if it

---

[4] Again, the Court considers any arguments concerning violation of 42 U.S.C. § 1985, 18 U.S.C. § 241, 18 U.S.C. § 242, or the First Amendment waived. (*See supra* note 2.)

included such claims. *Cf. In re Miller*, 124 F. App'x 495, 501 (9th Cir. 2005) (a claim for tortious interference with business interests was not a personal injury tort under § 157(d)(5)). The bankruptcy court is clearly better suited to handle such claims insofar as they relate to an ongoing bankruptcy proceeding, particularly where (as here) those claims are asserted by a creditor against the debtor. For these reasons, the Court cannot conclude that Congress intended for the district court to try such claims. Consequently, § 157(d)(5) does not provide a basis on which to withdraw the reference of this action.

**B.    Discretionary Withdrawal**

The Firefighters next contend that the Court should exercise its discretion to withdraw reference because this case is a non-core proceeding, and efficiency would be enhanced by litigating this case in the district court. The City responds that the action is a core proceeding because it is, in effect, a proof of claim, and is thus better situated for resolution in the bankruptcy court. The Court disagrees that the action is effectively a proof of claim, but holds that it is nonetheless a core proceeding and thus should stay with the bankruptcy court.

Even if withdrawal is not mandatory, the district court still has the discretion to withdraw the reference upon a showing of "good cause" by the movant. 28 U.S.C. § 157(d). "To determine whether cause for permissive withdrawal exists, a district court 'should first evaluate whether the claim is core or non-core, since it is upon this issue that questions of efficiency and uniformity will turn.'" *Temecula Valley Bancorp*, 523 B.R. at 214 (quoting *In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993)). "Next, the 'district court should consider the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors.'" *Id.* (quoting *Sec. Farms*, 124 F.3d at 1008).

**1.    Core/Non-Core Proceeding**

A core proceeding is one that "aris[es] under title 11[] or aris[es] in a case under

title 11." 28 U.S.C. § 157(b)(1). "The term 'arising under' describes those proceedings involving a cause of action created or determined by a statutory provision of title 11[, w]hereas 'arising in' refers to administrative matters that are not based on any right expressly created by title 11 but would nevertheless have no existence outside of the bankruptcy case." *In re ACI-HDT Supply Co.*, 205 B.R. 231, 234–35 (B.A.P. 9th Cir. 1997). Section 157 provides a non-exhaustive list of core proceedings, including the following two "catch-all" categories:

> (A) matters concerning the administration of the estate;
> . . .
> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

28 U.S.C. § 157(b)(2)(A), (O). The Ninth Circuit has also referenced several factors that may be useful in determining whether or not a matter is a core proceeding in borderline cases. This includes "whether the rights involved exist independent of title 11, depend on state law for their resolution, existed prior to the filing of a bankruptcy petition, or were significantly affected by the filing of the bankruptcy case." *In re Cinematronics, Inc.*, 916 F.2d 1444, 1450 n.5 (9th Cir. 1990).

Here, although the Firefighters' claims are obviously not brought under bankruptcy law, it is equally apparent that they would not exist outside of the City's bankruptcy proceeding. A debtor is "empowered by virtue of the Bankruptcy Code to deal with its contracts and property in a manner it could not have done absent the bankruptcy filing." *N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984). This includes the power to restructure labor relations with its employees by, among other things, rejecting a collective bargaining agreement. 11 U.S.C. § 365(a); *Bildisco*, 465 U.S. at 528. This, in turn, allows the debtor to unilaterally amend the terms and conditions of employment for their employees. *Bildisco*, 465 U.S. at 528–34. That is exactly what happened here—the City filed for bankruptcy, requested authority from the bankruptcy court to reject the MOU, and then proceeded to impose new labor

conditions on its employees in an attempt to narrow its substantial budget deficit. Although the Firefighters allege that the City violated its Charter and various state statutes by doing so, the fact remains that none of this would have occurred had the City not filed for bankruptcy in the first place. As a result, this action would not exist outside of the bankruptcy context, and thus it is a core proceeding. *See also Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. E. Air Lines, Inc.*, 121 B.R. 428, 433 (S.D.N.Y. 1990) ("[L]abor disputes are core proceedings."), *aff'd*, 923 F.2d 26 (2d Cir. 1991); *Elsinore Shore Assocs. v. Local 54, Hotel Emps. & Rest. Emps. Int'l Union*, 820 F.2d 62, 66 (3d Cir. 1987) ("[A] request for a[n injunction prohibiting a labor strike] was a 'matter concerning the administration of the estate,' and therefore was a core proceeding.").

The Court also finds that this matter fits within either of the two catch-all categories of core proceedings under § 157(b)(2). The City imposed interim conditions of employment on its employees in order to reduce its budget deficit and remain solvent during the pendency of the bankruptcy proceedings, and thus the conduct was part of its administration of the estate. § 157(b)(2)(A). Moreover, the injunctive relief sought will significantly affect the adjustment of the financial relationship between the creditor-City and the debtor-Firefighters. § 157(b)(2)(O). *See also In re City of Stockton, Cal.*, 478 B.R. 8, 29–30 (Bankr. E.D. Cal. 2012) (adverse action by City retirees against City for unilateral reduction in benefits held to be a core proceeding under subsections (A), (B), and (O)).

For the foregoing reasons, the Court does not hesitate to conclude that this matter is a core proceeding.

**2. Other Factors**

Because the bankruptcy court has the power to enter judgments in core proceedings, 28 U.S.C. § 157(b)(1), the remaining factors bearing on discretionary withdrawal—efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping—will

usually disfavor withdrawal once the action is found to be a core proceeding. This case is no different.

Judicial resources will no doubt be more efficiently used by keeping this matter with the bankruptcy court. That court has overseen the City's bankruptcy proceedings for several years, and is thus intimately familiar with all of its moving parts. This is particularly important given the size and complexity of this municipal bankruptcy. The bankruptcy court is also familiar with the long history and the circumstances of the dispute between the City and Firefighters, and thus is in a much better position to adjudicate this action. *See Hawaiian Airlines, Inc. v. Mesa Air Grp., Inc.*, 355 B.R. 214, 224 (D. Haw. 2006). It would also be highly disruptive to the ultimate disposition of the City's bankruptcy proceeding if this matter were to proceed along a completely separate timeline ungoverned by the bankruptcy court.

For similar reasons, allowing this case to proceed before the bankruptcy court will also minimize delay and costs to the parties, and will promote uniformity of bankruptcy administration. This proceeding is now seven months old, and the bankruptcy court has already made several significant rulings in this matter. Restarting the case in this Court would require the Court to get up to speed on the actions taken by the parties and the bankruptcy court, which would delay resolution of the matter. It could also result in rulings that are inconsistent with other rulings made in the broader bankruptcy case.

Finally, the Court suspects that the Firefighters are engaging in forum shopping. "Forum shopping is likely where a party moves to withdraw the reference after adverse findings have been made against it by the Bankruptcy Court." *In re GTS 900 F, LLC*, No. 2:09-BK-35127-VZ, 2010 WL 4878839, at *5 (C.D. Cal. Nov. 23, 2010). Here, the Firefighters have appealed at least four adverse orders from the bankruptcy court. Given this succession of appeals, it seems apparent that the Firefighters simply do not want to litigate before the Bankruptcy Judge assigned to this matter. The Court therefore declines to exercise its discretion to withdraw the reference of this matter.

## C. Right to Jury Trial

Finally, the Firefighters argue that they are entitled to a jury trial before the district court on their claims. The City again counters that the Firefighters' claims are essentially proofs of claims, and that there is no right to a jury trial for proofs of claims. The Court agrees that the Firefighters have a right to a jury trial on their claims under § 1983 and the FLSA, but not on any other claims in their Complaint.

"[T]he bankruptcy court is unable to preside over a jury trial absent explicit consent from the parties and the district court." *In re Dyer*, 322 F.3d 1178, 1194 (9th Cir. 2003) (citing 28 U.S.C. § 157(e)); *see also Cinematronics*, 916 F.2d at 1451 (bankruptcy court cannot conduct jury trial in noncore proceedings); *In re Clay*, 35 F.3d 190, 197 (5th Cir. 1994) (bankruptcy court cannot conduct trial in core proceedings). Thus, for any claim on which a party has a right to a jury trial, that trial must be conducted before the district court.

The right to a jury trial derives from one of two sources: the statute under which the claim is brought or the Seventh Amendment. *Tamosaitis v. URS Inc.*, 781 F.3d 468, 485 (9th Cir. 2015). The Supreme Court has determined that a Seventh Amendment jury right extends to a § 1983 claim seeking damages for violations of the Fifth Amendment's Takings Clause. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999). The Court has also held that a private plaintiff has a right to a jury trial for claims under the FLSA, *Lorillard v. Pons*, 434 U.S. 575, 580 (1978), although it is unclear whether the source of this right is statutory or constitutional, *see Lehman v. Nakshian*, 453 U.S. 156, 164 & n.11 (1981). The Firefighters' remaining claims, however, all seek only equitable remedies, such as declaratory or injunctive relief and writs of mandate. (Compl. ¶¶ 114–16, 122, 145, 149, 169, 186, 192.) It is well-settled that a Seventh Amendment jury trial right exists only for legal claims, not equitable claims. *See Ross v. Bernhard*, 396 U.S. 531, 533 (1970); *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 962 (9th Cir. 2001). Thus, the Firefighters are entitled to a jury trial on only their § 1983 claim and their FLSA

claim.

But this does not mean that "the bankruptcy court must instantly give up jurisdiction and that the case must be transferred to the district court. Instead, the bankruptcy court is permitted to retain jurisdiction over the action for pre-trial matters." *In re Healthcentral.com*, 504 F.3d 775, 787 (9th Cir. 2007) (citation omitted). "[R]equiring that an action be immediately transferred to district court simply because of a *jury trial right* would run counter to our bankruptcy system[,] . . . [which] promotes judicial economy and efficiency by making use of the bankruptcy court's unique knowledge of Title 11 and familiarity with the actions before them. Accordingly, if [the Court] were to require an action's *immediate* transfer to district court simply because there is *a jury trial right* we would effectively subvert this system. Only by allowing the bankruptcy court to retain jurisdiction over the action until *trial is actually ready* do we ensure that our bankruptcy system is carried out." *Id.* at 787–88 (citations omitted) (emphasis in original). As a result, the Court shall only conduct the trial on these claims; all pre-trial proceedings, including hearing and ruling on any dispositive motions, will be conducted by the bankruptcy court. *See id.*

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** the Firefighters' Motion to Withdraw Reference. (ECF No. 1.) The bankruptcy court shall retain jurisdiction over this action, with the sole exception that any jury question that is necessary to resolve the Firefighters' claims for damages under § 1983 and the FLSA shall be tried before this Court. With respect to those two claims, the Court **ORDERS** as follows:

(1) The bankruptcy court shall fully control all pre-trial proceedings—including (but not limited to) setting a trial date, resolving all pre-trial discovery disputes, and hearing and determining all issues of law (including dispositive motions)—except as otherwise provided in this Order;

(2) The Firefighters and the City shall file a Joint Report on **February 1,**

**2016** advising the Court of the trial date (if one has been set), and all pre-trial dates and deadlines. The parties shall file a Joint Report every ninety days thereafter advising on the status on the action, including the status of any motions pending before the bankruptcy court and any changes in the case timeline affecting the trial of this matter;

   (3) This Court shall conduct the Pre-Trial Conference, hear and determine all Motions in Limine, and conduct trial. The parties shall file all pre-trial documents in this Court, including (but not limited to): Pre-Trial Conference Order, Trial Briefs, Exhibit Lists, Witness Lists, Jury Instructions, Verdict Forms, and Motions in Limine. The parties are strongly encouraged to review the Local Rules and the Court's Standing Order with respect to its trial and pre-trial procedures.

   The Firefighters are directed to file a copy of this Order with the bankruptcy court. If the parties later decide to stipulate to the bankruptcy court conducting the trial, they shall submit a stipulation and proposed order to this Court for its review.

   **IT IS SO ORDERED.**

   November 10, 2015

               _____
                 **OTIS D. WRIGHT, II**
              **UNITED STATES DISTRICT JUDGE**